DECISION AND JUDGMENT ENTRY
This is an appeal from a Circleville Municipal Court, Small Claims Division, "judgment" awarding Thelma M. Yahraus, plaintiff below and appellee herein, longevity pay pursuant to a collective bargaining agreement with the City of Circleville.
The City of Circleville (City), defendant below and appellant herein, raises the following assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
 "THE COURT'S HOLDING THAT IT COULD NOT `DISTURB THE MAGISTRATE'S DECISION' AS APPELLANT DID NOT PROVIDE A TRANSCRIPT FOR REVIEW IS CONTRARY TO LAW."
SECOND ASSIGNMENT OF ERROR:
 "THE MUNICIPAL COURT LACKED JURISDICTION OVER APPELLEE'S CLAIM AS APPELLEE FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES PURSUANT TO THE COLLECTIVE BARGAINING AGREEMENT."
THIRD ASSIGNMENT OF ERROR:
 "THE COURT'S FINDING THAT THE SUBJECT MATTER OF THIS CASE IS `BEYOND THE MERE INTERPRETATION AND APPLICATION OF CONTRACT TERMS' IS CONTRARY TO THE RECORD AND TO LAW."
FOURTH ASSIGNMENT OF ERROR:
 "THE COURT'S HOLDING THAT APPELLEE SHOULD BE ENTITLED TO A LONGEVITY PAYMENT IN 1999 AS HER SEPARATION FROM EMPLOYMENT WAS INVOLUNTARY IS CONTRARY TO THE EXPRESS TERMS OF THE COLLECTIVE BARGAINING AGREEMENT."
Our review of the record reveals the following facts pertinent to the instant appeal. On January 16, 1972, appellee began working for the city. During her employment, appellee was a member of the Ohio Patrolmen's Benevolent Association and a collective bargaining agreement governed her employment. On August 31, 1999, appellee, due to medical reasons, retired from her employment with the city.
Pursuant to the collective bargaining agreement, appellee sought longevity pay for her twenty-seven years of service. Article XXVI of the collective bargaining agreement addresses longevity pay. The article provides:
 "26.01 All full-time employees shall be entitled to longevity pay for the continuous service to the City. Entitlement to such longevity pay shall be determined upon the following conditions, all of which must exist for eligibility for longevity. The employee must:
1. Be a full-time employee;
 2. Have completed five (5) years of continuous, uninterrupted employment with the City; and
3. Be an employee of the City on the date of longevity.
 26.02 The amount of longevity pay for employees shall be fifty dollars ($50.00) times the number of years completed of continuous service with the city as of December 1st of each year. No credit shall be granted for pro-rated or partial years of service. If an officer is killed in the line of duty, then the officer's longevity payment for that year will be paid to the officer's estate.
 26.03 Such longevity pay shall be issued annually, not earlier than the first regular City pay date in December, but not later than the second regular pay in December."
The city denied appellee's request for longevity pay reasoning that appellee was not an employee on the date of longevity payment, as the collective bargaining agreement required.
Appellee subsequently filed a grievance in accordance with the collective bargaining agreement. The city continued to deny appellee's request for longevity pay for the year 1999.
On November 4, 1999, appellee filed a complaint in the Circleville Municipal Court, Small Claims Division, seeking $1350 in longevity pay for her last year of service with the city. The city claimed, however, that appellee was not entitled to longevity pay because she terminated her employment on August 31, 1999, a date prior to the December 1 longevity payment date service requirement.
On December 6, 1999, the magistrate issued a recommendation that appellee be awarded $1350 in longevity pay. The magistrate stated:
 "This Court finds that the purpose of longevity pay is to reward employees for continuous years of service to the City and thus to promote employee loyalty and commitment. The contract does not distinguish between voluntary and involuntary termination of employment. However, in light of the purpose of longevity, this Court will treat voluntary and involuntary separations differently. For health reasons and at the direction of her physician, Plaintiff was forced to retire on August 31, 1999, after completing twenty seven (27) full years of service, but prior to the longevity payment date in December, 1999. Since Plaintiff's separation was involuntary, she should be entitled to longevity pay for twenty seven (27) years of service, which, determined pursuant to the collective bargaining agreement, would b[e] $1350.00. Consequently, the requirement that an individual be an employee on the date of payment of longevity is not rationally related to the underlying purposes for longevity pay. A more appropriate provision, which may be negotiated in the next collective bargaining agreement for all employees, regardless of reason for separation from employment, should tie longevity to the anniversary date of each employee."
The magistrate also noted that prior to filing the complaint, appellee had exhausted all of her administrative remedies pursuant to the collective bargaining agreement.
On December 17, 1999, the city filed the following objections to the magistrate's decision:
 "(1) the Magistrate's finding that `prior to the filing of this action, Plaintiff exhausted all of her administrative remedies pursuant to the collective bargaining agreement' is factually incorrect; (2) this Court lacks subject matter jurisdiction over Plaintiff's claim; and, (3) the Magistrate's finding that `[s]ince Plaintiff's separation was involuntary, she should be entitled to longevity pay for twenty seven (27) years of service' is contrary to the express terms of the collective bargaining agreement."
Appellant first objected to the magistrate's finding that appellee exhausted her administrative remedies. Appellant supported its objection with the affidavit of Ralph Starkey, the city's human resource director. Starkey averred that appellee complied with the four step grievance procedure, but failed to submit the grievance to arbitration, as provided for in the collective bargaining agreement. Second, appellant argued that because appellee did not comply with the proper administrative procedures pursuant to the collective bargaining agreement, the court lacked jurisdiction to resolve the dispute. Finally, appellant argued that the magistrate's decision violated the express terms of the agreement. Appellant argued that the magistrate imposed her "own brand of industrial justice."
On January 7, 2000, the trial court overruled appellant's objections and adopted the magistrate's decision. The court determined that: (1) it could not rule on appellant's objection to the magistrate's finding that appellee exhausted her administrative remedies because appellant did not provide a transcript of the proceedings; (2) exceptions to the general rule of exhaustion of remedies existed; and (3) it could imply a term in the collective bargaining agreement because the contract failed expressly to address the disability aspect. We note that the trial court's "judgment entry" provided as follows:
 "Therefore, for the reasons set forth herein above the objection of the defendant to the Magistrate's decision is overruled. The Magistrate's decision is adopted by the court."
Appellant filed a timely notice of appeal.
Initially, we must address a threshold issue concerning the trial court's "judgment entry." In the case sub judice, we note that the trial court's January 7, 2000 judgment adopted the Magistrate's Decision. The trial court did not, however, enter its own separate judgment containing a clear pronouncement of the trial court's judgment and a statement of relief granted by the court. See Civ.R. 53[1]; Civ.R. 54(A); In reMichael (1991), 71 Ohio App.3d 727, 595 N.E.2d 397; Dell v. Bradburn
(1981), 2 Ohio App.3d 139, 440 N.E.2d 1359; In re Nebbia, (Aug. 23, 1991), Lake App. No. 90-L-15-139, unreported; White v. White, (Jan. 25, 1991), Trumbull app. No. 90-T-4388, unreported; Lee v. Lee, (Dec. 18, 1987), Portage App. No. 17031, unreported. Merely adopting a magistrate's decision, without separately setting forth the court's own judgment, is not permitted under Civ.R. 54(A). See In re Michael, supra; Fader v.Fader, (Mar. 21, 1991), Cuyahoga App. No. 59885, unreported.
Thus, the trial court's judgment entry should address all issues submitted to the court for determination so that the parties may know, by referring to the judgment entry, what their responsibilities and obligations may be. In Lavelle v. Cox, (Mar. 15, 1991), Trumbull App. No. 90-T-4396, unreported, Judge Ford wrote in his concurring opinion as follows:
 "Therefore, what must be determined is what constitutes a sufficient `judgment' under Civ.R. 53(E)(5). Generally defined, a judgment is a pronouncement by a court of competent jurisdiction which determines matters submitted to it. State ex rel. Curran v. Brookes (1943), 142 Ohio St. 107, 50 N.E.2d 995. The substance of a judgment must be sufficiently definite to be enforceable as well as adequately inform the parties regarding the outcome of the case or controversy.
 Adopting the referee's report and entering judgment is necessarily a two-step process. The trial court may indicate that it has considered the report, the objections of the parties, and the arguments of counsel, and thereafter may order that the findings of the referee be adopted by the court. However, this type of recitation alone does not constitute an entry of judgment. The trial court must then enter its own independent judgment disposing of the matters at issue between the parties, such that the parties need not resort to any other document to ascertain the extent to which their rights and obligations have been determined. In other words, the judgment entry must be worded in such a manner that the parties can readily determine what is necessary to comply with the order of the court.
 It is fundamental that the trial court employ diction which should include sufficient operative, action-like and conclusionary verbiage to satisfy the foregoing fundamental elements. Obviously, it is not necessary for such directive to be encyclopedic in character, but is should contain clear language to provide basic notice of rights, duties, and obligations.
 In the instant case, the trial court indicated that it had reviewed the referee's report and objections to the report. Thereafter, the trial court approved and adopted the referee's report `as the final orders of the court as they relate to visitation.' All that can be determined by this `judgment entry' is that it deals with visitation. It fails to specify the rights and obligations of the parties in even a de minimus manner so that the can readily determine what is required to comply with the order of the court. Accordingly, the trial court did not properly fulfill its judicial responsibilities as required by Civ.R. 53 as it failed to enter `its own judgment' as defined in the foregoing analysis."
See, also, In re Zakov (1995), 107 Ohio App.3d 716, 669 N.E.2d 344; Pacev. Pace, (Oct. 8, 1996), Gallia App. No. 95CA17, unreported; Fields v.Fields (August 24, 1998), Lawrence App. No. 97CA50, unreported; McDonaldv. McDonald (Feb. 23, 1996), Highland App. No. 95CA884, unreported;Christy v. Christy (June 12, 1997), Highland App. No. 96CA902, unreported.
Recently, in Harkai v. Scherba Industries, Inc. (2000),136 Ohio App.3d 211, 736 N.E.2d 101, the Court of Appeals for the Ninth Appellate District confronted this issue. The Harkai court dismissed the appeal and wrote at 136 Ohio App.3d 215, 736 N.E.2d 104:
 "The foregoing definitions stress that the primary function of a final order or judgment is the termination of a case or controversy that the parties have submitted to the trial court for resolution. This court must look to the language employed in the purported judgment entry to ascertain whether the trial court's entry accomplishes that result. See Peters v. Arbaugh (1976), 50 Ohio App.2d 30, 32-33, 4 O.O.3d 17, 18-19, 361 N.E.2d 531, 533. One fundamental principle in the interpretation of judgments is that, to terminate the matter, the order must contain a statement of the relief that is being afforded to the parties. See, e.g., Reiter v. Reiter (May 11, 1999), Hancock App. No. 5-98-32, unreported, 1999 WL 378354; _Pace v. Pace (Oct. 8, 1996), Gallia App. No. 95CA17, unreported, 1996 WL 595846; Martin v. Martin (June 24, 1994), Portage App. No. 93-P-0065, unreported, 1994 WL 315667; Walker v. Walker (Aug. 5, 1987), Summit App. No. 12978, unreported, 1987 WL 15591; Gaines v. Gaines (Apr. 8, 1980), Greene App. No. 1109, unreported.
In Walker, this court explained:
 '[T]he content of the judgment must be definite enough to be susceptible to further enforcement and provide sufficient information to enable the parties to understand the outcome of the case. If the judgment fails to speak to an area which was disputed, uses ambiguous or confusing language, or is otherwise indefinite, the parties and subsequent courts will be unable to determine how the parties' rights and obligations were fixed by the trial court.'"
(footnote omitted)
The Harkai court then concluded at 136 Ohio App.3d 220, 736 N.E.2d 108:
"As we state in Walker, supra:
 `What the referee does is not a judicial act. Therefore, can the judge by `incorporating the referee's report' or by `adopting the referee's report' raise the report to the status of a judicial act? The answer must be no. Aside from the fact that to do so would be the equivalent of allowing the referee to perform a judicial act, such incorporation or adoption of a judgment fails to meet the requirement of the certainty of judgments since it fails to disclose how the matter was resolved.
 Other courts have agreed that a trial court order stating only that it is adopting a magistrate's decision does not disclose how the trial court is resolving the issues submitted to it, and, therefore, is not final. See, e.g., In re Zakov (1995), 107 Ohio App.3d 716, 717, 669 N.E.2d 344, 344-345; Wellborn v. K-Beck Furniture Mart, Inc., 54 Ohio App.2d at 66, 8 O.O.3d at 94, 375 N.E.2d at 62; Reiter v. Reiter (May 11, 1999), Hancock App. No. 5-98-32 unreported; 1999 WL 378354; In re Elliott (Mar. 5, 1998), Ross App. No. 97 CA 2313, unreported, 1998 WL 101351; Pace v. Pace (Oct. 8, 1996), Gallia App. No. 95 CA 17, unreported, 1996 WL 595846.
 In the instant case, the only effect of the purported judgment entry is to indicate that the trial court approved of the magistrate's decision. The trial court's statement that it `affirms' the magistrate's decision is not a statement of the relief ordered for the parties to remedy the dispute between them. Accordingly, this entry is not a judgment or final order from which an appeal might lie. Nor is this a post-judgment entry as contemplated by Civ.R. 53(E)(4)(c). As noted above, after a magistrate's decision has been filed and served upon the parties, the trial court need not wait to enter judgment for the time period to pass for filing objections. Civ.R. 53(E)(4)(c). The record in this case does not reveal a prior judgment entry.'"
Accordingly, based upon the foregoing reasons, and in light of the Civ.R. 54(A) separate judgment requirement, we hereby dismiss the instant appeal and remand this matter to the trial court for further proceedings consistent with this opinion.[2]
JUDGMENT ENTRY
It is ordered that the appeal be dismissed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Circleville Municipal Court, Small Claims Division, to carry this judgment into execution.
Kline, P.J.: Concurs in Judgment Opinion
 ________________________ Peter B. Abele, Judge
[1] We note that Juv.R. 40 and Civ.R. 53 were amended effective July 1, 1995. The current version of the rules give magistrates the authority, in certain situations, to enter "orders" and "decisions."
[2] If, after the trial court enters final judgment herein, the appellant decides to pursue its appeal, we will accept the briefs previously filed by the parties.